IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Emily Peters, | ) | C/A No. 2:09-272-JFA-RSC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | **ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

  The plaintiff, Emily Peters, brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c.

  The Magistrate Judge assigned to this action[1] has prepared a Report and Recommendation wherein he suggests that the Commissioner's decision to deny benefits is not supported by substantial evidence. The Magistrate Judge opines that the decision should be reversed and remanded for consideration of new evidence, a proper determination of the plaintiff's residual functional capacity(RFC), and continuation of the sequential evaluation process, if necessary.

  The parties were advised of their right to submit objections to the Report and

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

Recommendation which was filed on October 30, 2009. The Commissioner has filed objections to the Magistrate Judge's suggestion of remand. It thus appears that this matter is ripe for review.

PROCEDURAL HISTORY

The plaintiff applied for SSI on July 25, 2005 alleging disability as of June 1, 1999 due to osteoporosis/osteopenia, borderline intellectual functioning, Attention Deficit Hyperactivity Disorder (ADHD), and tachycardia with syncope. The plaintiff was 18 years old at the time she applied for benefits. She graduated from a high school special education program and has no past relevant work experience. She had not engaged in any substantial gainful activity since the alleged onset date of her disability.

The plaintiff's SSI application was denied initially and on reconsideration. The Administrative Law Judge (ALJ) held a hearing on October 19, 2007 and issued a decision on March 25, 2008, concluding that the claimant was not disabled. Once approved by the Appeals Council, the ALJ's decision became the final decision of the Commissioner. Plaintiff thereafter filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner.

STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002). Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall

2

be conclusive ..." 42 U.S.C. § 405(g). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001) (alteration in original).

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). This determination of a claimant's disability status involves the following five-step inquiry: whether (1) the claimant is engaged in substantial activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform [his or] her past relevant work; and (5) the claimant can perform other specified types of work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n. 1 (4th Cir.2005) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2005)).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. *See Walls*, 296 F.3d at 290. This determination requires a consideration of "whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir.1981). If the claimant is found to have the ability to adjust to other work, the Commissioner will not find him disabled. 20 C.F.R. § 404.1520(g)(2).

DISCUSSION

*The ALJ's Findings*

In his decision of March 25, 2008, the ALJ made the following findings:

1.      The claimant has not engaged in substantial gainful activity since July 25, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq*.

2.      The claimant has the following severe combination of impairments: osteopenia/osteoporosis, borderline intellectual functioning, history of ADHD, and tachycardia (20 CFR 416.920c).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration, I find that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand, or walk for six hours in an eight-hour workday. She can climb stairs or ramp, balance, kneel, and crouch on a frequent basis. Stooping and crouching are limited to an occasional basis. She cannot climb ladders, ropes or scaffolds because of the

history of tachycardia. She has no limitations in her ability to perform tasks requiring pushing or pulling with his upper or lower extremities. She has no manipulative, visual, communicative, or environmental limitations. She can understand and carry out simple, repetitive tasks such as unskilled non-production work.

5.        The claimant has no past relevant work (20 CFR 416.965).

6.        The claimant was born on January 3, 1987 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.        The claimant has at least a high school education and is able to communicate in English (20 CFR 416.968).

8.        Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.        Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960 and 416.966).

10.      The claimant has not been under a disability, as defined in the Social Security Act, since July 25, 2005, the date the application was filed (20 CFR 416.920(g)).

## *The Magistrate Judge's Report and Recommendations*

The Magistrate Judge suggests that the ALJ's decision is rife with error, unsupported conclusions and unusual rationale and should be remanded for another ALJ to properly consider the plaintiff's claim. He suggests that the case be remanded to the Commissioner for consideration of new evidence, a proper determination of the plaintiff's RFC, and continuation of the sequential evaluation process, if necessary.

## *Medical Evidence Before the Commissioner*

A brief review of the medical evidence before the ALJ from the parties' briefs is as follows:

In July 1999, a bone density test was performed on the plaintiff which revealed

significant under-mineralization in the lumbar spine and femoral neck which left her at an increased risk for fragility fractures of her spine and hip. The plaintiff notes that the record thereafter is somewhat sketchy, but there is no evidence that her condition improved.

In December 2001, the plaintiff was under the care of a psychologist, Dr. Robert Pensa, and a psychiatrist, Dr. Robert Knaus. She was initially diagnosed with post traumatic stress disorder (PTSD), anorexia, and ADHD. In November 2003, she was placed on Atenol and presented with a fluctuating hear rate. In November 2005, plaintiff was examined by Dr. Hatton, an Agency psychologist, who found the plaintiff thin and emotionally immature, but otherwise she did not appear to be significantly depressed. Dr. Hatton noted that her prognosis to maintain in a competitive work situation was guarded, that she functioned below average intellectually, needed special education and continued psychiatric treatment.

The plaintiff does not mention in her brief the treatment in August 2004 by Dr. Steven Schwartz when she was 17 years old. Dr. Schwartz diagnosed a history of hypercalciuria and environmental allergies and advised the plaintiff against long-term use of prednisone for her allergies. It appears that he performed a bone density evaluation on her which revealed osteopenia.

In November 2005, Dr. Lipps's examination of the plaintiff revealed no joint deformities, full range of motion, normal reflexes and sensation, full motor strength, no tremors, and normal gait and station. He also noted that plaintiff had a normal mental status examination and did not find any restrictions in plaintiff's ability to walk, sit, stand, life, and handle objects.

In November 2005, plaintiff was seen by cardiologist Dr. Steinhoff due to her history

of mitral valve prolapse, palpitations, and syncopal episodes beginning since she was about ten years old. He noted the plaintiff's testing in 2003 on a Holter monitor which showed the presence of sinus tachycardia and the possibility of Lown-Ganong-Levine syndrome or another supraventricular syndrome. The EKG Dr. Steinhoff performed showed normal sinus rhythm with nonspecific ST-T changes with a short PR interval. He advised the plaintiff to avoid caffeine and not operate a motor vehicle.

In January 2006, the plaintiff was examined by state agency physician T. Wayne Conger, Ph.D. who reviewed plaintiff's record and completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity form. Dr. Conger determined that plaintiff's organic mental disorder resulted in a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Dr. Conger also found that plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions, noting that plaintiff was mentally capable of performing simple, repetitive tasks on a sustained basis.

In February 2006, plaintiff underwent diagnostic testings for complaints of episodic and severe chest pain and tachycardia. Her chest x-ray was normal and the CT scan showed no abnormalities or evidence of pulmonary embolis, and an echocardiogram was normal with no evidence of mitral valve prolapse.

In April 2006, state agency medical consultant Albert Ponterio reviewed the plaintiff's medical record and determined that plaintiff had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour

workday; sit about six hours in an eight-hour workday; frequently climb ramps and stairs, balance, kneel and crawl; occasionally stoop and crouch; never climb ladders, ropes or scaffolds; and should avoid moderate exposure to hazards such as machines and heights.

In April 2006, state agency physician Dr. Nancy Dinwoodie reviewed the plaintiff's record and completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity form. Dr. Dinwoodie determined that plaintiff's organic mental disorder and anxiety disorder resulted in a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Dr. Dinwoodie also found that plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace with an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. She commented that plaintiff was capable of understanding and following instructions, sustaining concentration for task completion, completing a full work day and work week, and maintaining socially appropriate behavior and that plaintiff was aware of normal hazards and was able to use judgment to avoid them.

In April 2007, plaintiff underwent genetic counseling. At the time, she was twenty weeks pregnant with a delivery date of August 2007. Dr. R. Curtis Rogers noted her genetic summary and advised plaintiff that she may contact his office for further genetic counseling.

In April 2007, the plaintiff was seen by Dr. Murdock, a nephrologist, regarding her history of hypercalciuria. He examined the plaintiff and reviewed the results of a 2004 bone

density test which showed a low bone density at all sites measured. Dr. Murdock's laboratory tests showed that the plaintiff had an abnormal calcium output and Dr. Murdock concluded that the plaintiff suffered from osteopenia and hypercalciuria. He also noted that plaintiff had regular cardiac rate and rhythm, normal sensation and reflexes, full and pain-free range of motion and normal strength. He advised plaintiff to take calcium supplements and return in two months for additional laboratory testing.

In October 2007, Dr. Knaus noted that he began treating the plaintiff in December 2001 and last saw her in May 2006. He explained his treatment with medicine and noted that it was probable that in any work setting she would require structure beyond normal workplace accommodations, require close supervision, and that competitive full-time employment would most probably cause her to decompensate psychologically. He noted that he had not seen her in some time, but that her condition persisted despite good compliance with medical requirements.

Dr. Murdock's October 2007 treatment notes indicate that plaintiff had an uneventful delivery and normal infant. He noted his concerns that plaintiff had such severe osteoporosis at her young age with a history of multiple fractures and recommended plaintiff take Fosamax for her osteoporosis.

In December 2007, the plaintiff was examined by psychologist Dr. Ruffing, who administered two psychological tests (the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test). Dr. Ruffing did not perform testing on her emotional state, such as the MMPI. He was provided the records of the plaintiff's treating physicians, Dr. Pensa and Hatton.

In April 2008, Dr. Mayte Sandrin examined plaintiff for her osteoporosis. Plaintiff complained of difficulties caring for her baby because she was too weak to hold her for long periods of time. Dr. Sandrin found plaintiff had no physical deformities or obvious abnormalities on examination.

In May 2008, Dr. Landon Key, a pediatrician specializing in osteoporosis, completed a brief questionnaire noting plaintiff's reports of pain in her hands. He noted her severe osteoporosis and that her pain would affect the typical individual's ability to sit or stand for long periods of time. He also noted his belief that unless she has an absorption problem, if she takes her calcium and vitamin D, that within six months to a year, her condition would improve. He also noted that if her condition did not improve, he would conduct further investigation into the cause. Dr. Key completed a questionnaire stating that he believed plaintiff had pain and that she may have to rest briefly between tasks based on her hands hurting.

In June 2008, the plaintiff was examined second time by Dr. Ruffing. He administered an MMPI-2 test noting that the plaintiff was impaired in several key areas relating to her ability to function satisfactorily in a work environment. He diagnosed plaintiff with personality disorder, NOS, with passive-aggressive features.

### The Vocational Expert's Testimony

The Vocational Expert (VE), Dr. Kathleen Robbins, testified that the plaintiff would be able to work, with a limitation to light exertional activity, and was further limited to unskilled work and simple repetitive tasks. The VE testified that the hypothetical individual could perform the unskilled jobs of maid, house cleaner, ticket taker, or clerical worker. The

VE also testified that a person with the plaintiff's limitations (frequently distracted and in need of close supervision) would be unemployable.

*The Plaintiff's Arguments*

In her brief, the plaintiff contends that in determining the plaintiff's overall RFC, the ALJ erroneously rejected the disabling limitations of the plaintiff imposed by both the treating and the examining medical specialists, both physicians and psychologists, and substituted them with his own findings which are inaccurate, speculative, and not supported by the record. The plaintiff also contends that there is new and material evidence from Drs. Ruffing and Key, the plaintiff's treating physicians, that indicates that the plaintiff's mental and physical impairments are commensurate with a lower RFC, which indicates that she cannot perform substantial gainful activity and therefore, remand is appropriate.

The ALJ stated that the opinion of Dr. Murdock, while it could not be ignored, was not entitled to controlling weight or special significance. The plaintiff contends this is error. Dr. Murdock began treating the plaintiff in April 2007 and conducted a physical examination and reviewed laboratory test results. Dr. Murdock diagnosed the plaintiff with osteoporosis and hypercalciuria. In October 2007, Dr. Murdock performed further bone studies and noted plaintiff's reports of pain limiting activity such as holding her baby. Dr. Murdock noted his concern that the plaintiff had such severe osteoporosis at a young age, and past history of multiple fractures after minimal trauma.

In December 2007, Dr. Murdock opined that the nature and severity of plaintiff's pain would have an impact on her ability to work and that her pain would interfere with her ability to concentrate and pay attention at work. The plaintiff contends that because Dr. Murdock

was plaintiff's attending physician at the time, that his opinion is entitled to great weight. The plaintiff suggests that Dr. Murdock's opinion was given little weight by the ALJ because it was given in response to a "check box" form supplied by plaintiff's counsel. The plaintiff argues that it was not a check box, but rather two questions:

> Q.     Would you expect hypercalciuria/osteoporosis to cause significant pain?
>
> A.     Yes, the osteoporosis will be painful given the severity of the disease.
>
> Q.     If the plaintiff attempted to work an 8-hour day, 5-day per week basis, is it most probable that the plaintiff would have problems with attention to and concentration sufficient to frequently interrupt tasks during the working portion of the workday?
>
> A.     Yes, due to pain from the osteoporosis.

The plaintiff argues that Dr. Murdock's response to these posited questions presents a full picture of the plaintiff's impairments and that his report must be viewed as a part of the whole, not stand alone. The plaintiff argues that the ALJ's rationale for the rejection of Dr. Murdock's opinion was because it contradicts Dr. Murdock's April 2007 findings when he found that the plaintiff's range of motion for her joints was full and pain free. The plaintiff contends that this does not negate Dr. Murdock's diagnosis of osteoporosis and hypercalciuria. The plaintiff contends that she has met the burden of proving objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself, citing *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990).

The plaintiff also contends that the ALJ erred in discounting Dr. Knaus's opinion because Dr. Knaus did not provide a reasonable basis for his opinion. The plaintiff argues that Dr. Knaus treated the plaintiff between January 2002 and October 2005 as the plaintiff's

primary treating physician. Dr. Knaus had diagnosed plaintiff with PTSD, ADHD, depression, mood swings, anorexia, and hallucinations in 2001. In October 2007, when he last saw the plaintiff, Dr. Knaus noted that she was able to function in a highly structured environment at school and would require structure beyond normal workplace accommodations.

Plaintiff contends that Dr. Knaus's opinion is supported by Dr. Hatton (an Agency psychologist), who noted that the plaintiff's condition was certainly guarded and who recommended continuing psychiatric treatment. The plaintiff also contends that the ALJ was selective in choosing the evidence that best suited his interpretation of the case, while ignoring or rejecting that which runs contrary to his conclusions. As such, the plaintiff contends Dr. Knaus's opinion should be given significant, if not controlling weight.

Finally, the plaintiff asserts that the ALJ failed consider the plaintiff's tachycardia and syncope. Cardiologist Dr. Steinhoff's examination of the plaintiff in November 2005 showed a normal sinus rhythm. He also documented palpitations, syncope, and short PR interval, noting that the plaintiff had significant symptoms of syncope and advised the plaintiff not to drive. The plaintiff again contends that the ALJ paid scant regard to Dr. Steinhoff's findings, made no mention of syncope, and ignored the report as it supported the plaintiff's claims. However, the ALJ acknowledged that plaintiff's tachycardia was a severe impairment and made an accommodation for such in his RFC restriction of no climbing ladders, ropes, or scaffolds.

The plaintiff asserts that the ALJ's basis for the RFC was in part, speculation. The plaintiff notes that the only medical report that alleges the plaintiff can occasionally lift 50

pounds is the sort of check box of Dr. Ponterio used and the ALJ condemned. The plaintiff also notes that although it is not known whether Dr. Ponterio is a medical doctor, he is described as a medical consultant, and he is the only "physician" who found the plaintiff capable of performing work at a medium level. The plaintiff compares Dr. Ponterio's findings with another state agency physician, Dr. Robert Steele, who found that the plaintiff had the capacity to perform light work, lifting 20 pounds occasionally, and 10 pounds frequently. The plaintiff questions the ALJ's finding that she could perform medium, or any type of work, when she has no past relevant work. As such, the plaintiff contends that there is no substantial evidence to support the ALJ's decision.

Ultimately, the plaintiff asserts that the ALJ did not apply the proper standards in deciding the case, and that the ALJ substituted his own conclusions for those of experienced medical professionals because theirs did not agree with the ALJ's finding. The plaintiff argues that the ALJ did not articulate any plausible reason why he rejected the opinion of Dr. Murdock, besides his finding that the doctor's assessment of plaintiff's limitations was inconsistent with his physical findings and based upon the plaintiff's subjective complaints. The plaintiff also asserts error as to the ALJ's finding that Dr. Knaus's opinion is not supported by substantial evidence because of plaintiff's admission that she cares for her infant and downloads music on her computer.

*Additional Evidence Submitted to the Appeals Council*

The plaintiff next contends that several items were submitted to and received by the Appeals Counsel. One was a report dated June 2, 2008 by Dr. Ruffing, the agency physician who examined the plaintiff, and who noted the results of an MMPI-2 test that he had not

previously administered. Dr. Ruffing found that plaintiff has a personality disorder with passive-aggressive features which impairs her ability to function in a normal eight-hour, five-day work week. Dr. Ruffing also noted plaintiff's low threshold for stress and ability to maintain concentration and attention for forty percent of the workday. Dr. Ruffing noted that she can understand, remember, and carry out simple job instructions, but only for seventy percent of the workday. The plaintiff submits that these two factors alone indicate that she is unable to perform work at the medium RFC level which the ALJ found.

The plaintiff also contends that Dr. Landon Key's November 2008 statement (noting that plaintiff's osteoporosis was so severe that several teeth were almost translucent, and micro fractures could be expected, along with considerable pain) supports Dr. Murdock's opinion that plaintiff's osteoporosis could cause pain, even though the ALJ discounted Dr. Murdock's opinion.

The plaintiff submitted this additional evidence to the Appeals Council which it expressly considered, but declined review because it found the new evidence did not provide a basis for changing the ALJ's decision. The plaintiff contends that the new evidence, post-denial of her application, should be considered by the Appeals Council since it relates to the period on or before the date of the ALJ's decision in deciding whether to grant review. The plaintiff asserts that the evidence is new and relative, not duplicative or cumulative, and that there is reasonable possibility that the new evidence would have changed the outcome of the Appeals Council's decision.

To the contrary, the Commissioner submits that the new evidence (the June 2008 findings of Drs. Ruffing and Key) is merely cumulative and not relevant. The Commissioner

argues that Dr. Ruffing's opinion is not substantially different from the previous opinions of record regarding plaintiff's mental functioning. The Commissioner also argues that the findings of Dr. Key were already contained in the record as evidence of plaintiff's decreased bone density due to calcium loss, as well as the advice to increase her calcium intake. The ALJ found the plaintiff's osteoporosis was a severe impairment which could be expected to produce the alleged symptoms.

Before the court can appropriately remand on the basis of newly discovered evidence, (1) the evidence must be relevant and not cumulative; (2) the Commissioner's decision might reasonably have been different had the evidence been presented; (3) good cause exists for the failure to submit the evidence to the Commissioner; and (4) plaintiff offers a general showing of the nature of the newly discovered evidence. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).

The Appeals Council incorporated the new evidence of Drs. Ruffing and Key into its administrative record and ultimately declined review. As the Commissioner notes, the Appeals Council does not need to provide detailed reasons for finding that the new evidence did not provide a basis for changing the ALJ's decision. *See Hollar v. Comm'r of the Soc. Sec. Admin.*, No. 98-2748, 1999 WL 753999 at *1 (4th Cir. Sept. 23, 1999) (unpublished) and *Freeman v. Halter*, No. 00-2471, 2001 WL 847978, at*2 (4th Cir. July 27, 2001) (unpublished).

*The Commissioner's Objections to the Magistrate Judge's Report*

First, the Commissioner disagrees with the Magistrate Judge's statement that the medical evidence concerning plaintiff's RFC consists of opinions of two non-examining

state agency physicians, Dr. Robert L. Steele and Dr. Albert Ponterio. In his Report, the Magistrate Judge refers to the opinion of Dr. Robert L. Steele, a board-certified in obstetrics and gynecology, who opined in November 2005, that the plaintiff was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. The Magistrate Judge then notes that another medical consultant, Dr. Ponterio, opined in April 2006 that plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently. The Magistrate Judge suggests that there is no indication what evidence was before Dr. Ponterio who was a non-examining, non-treating medical consultant. However, the record (Tr. 232) notes that Dr. Ponterio reviewed plaintiff's 2003 and 2005 examination and test results.

The Commissioner appears to suggest that the Magistrate Judge overlooked another opinion, that of Jack Lipps, M.D. The Commissioner notes that the after his consultive examination of the plaintiff, Dr. Lipps opined in November 2005 that the plaintiff showed no deformities, full range of motion, normal reflexes and sensation, full motor strength, no tremors, and normal gait and station and a normal mental status examination. The Commissioner argues that Dr. Lipps' opinion, as well as evidence showing that plaintiff's examinations have been normal or near normal, supports the ALJ's RFC findings.

Next, the Commissioner contends that the Magistrate Judge erred when he suggested in the Report that there was no indication what evidence was before the state agency physicians. Dr. Ponterio found in April 2006 that plaintiff could perform a range of medium work, and he specifically noted that he had reviewed plaintiff's exam and test results from 2003 and 2005, as well as Dr. Lipps' negative examination findings and opinion that she had no limitations. (Tr. 232). The Commissioner argues, and the undersigned agrees, that the

17

ALJ could rely on Dr. Ponterio's opinion regarding plaintiff's RFC, citing SSR 96-p (opinions of state medical consultants must be considered and weighed as those of highly qualified experts); and *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (ALJ can give great weight to an opinion from a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with the objective evidence of record).

Finally, the Commissioner asserts that the Magistrate Judge was incorrect in his suggestion that the ALJ improperly discounted the opinions of Drs. Murdock and Knaus. The Commissioner argues that the opinions of Drs. Murdock and Knaus were contradicted by other, more persuasive evidence. Specifically, Dr. Murdock's October 2007 opinion that the plaintiff's osteoporosis caused pain that would interfere with her ability to complete a normal workday was not consistent with his treatment notes which did not reflect disabling symptoms. The Commissioner contends that when the treating physician's opinion concerning the severity of the plaintiff is inconsistent with the substantial evidence in the record or is not well-supported by clinical and laboratory diagnostic techniques, such opinion is not entitled to controlling weight, citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

The Magistrate Judge notes in his Report that Dr. Murdock evaluated the plaintiff as a child in 2004 and following her pregnancy in 2007, with no deviation in the test results substantiating the diagnosis of osteoporosis and from his original opinion regarding his concern for the severity of her osteoporosis. The Magistrate Judge also notes that Dr. Knaus examined the plaintiff concerning emotional disorders and diagnosed post traumatic stress disorder secondary to physical abuse by her father or possible bipolar disorder versus ADHD.

His treatment notes are from 2001 to 2005.

The ALJ found that Dr. Knaus' opinion that plaintiff could only work in a sheltered environment was unpersuasive since Dr. Knaus had not seen plaintiff since May 2006 and his examination notes did not reflect any limitations on plaintiff's activities or indicate how her activities were limited. The Commissioner submits that Dr. Knaus' lack of placement of limitations on the plaintiff, as well as the plaintiff's positive performance in special education, and her daily activities of caring for her baby, as well as other inconsistencies led the ALJ to properly discount Dr. Knaus' opinion.

In his Report, the Magistrate Judge suggests that the ALJ's ignorance of the opinions of Drs. Murdock and Knaus reveals that the ALJ made no attempt to comply with the regulations regarding opinions of treating physicians and that the ALJ's conclusion is not supported by substantial evidence. Further, the Magistrate Judge suggests that the ALJ fails to fully and fairly weigh the physicians' opinions even if they are not entitled to controlling weight.

The Magistrate Judge suggests that even if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider, under 20 CFR Section 404.1527(d) (2)–(5), the weight given to the physician's opinion by applying five factors including the length of the treatment relationship and the frequency of the examinations; the nature and extent of the treatment relationship; the evidence with which the physician supports his opinion; the consistency of the opinion; and whether the physician is a specialist in the area in which he is rendering an opinion. The Magistrate Judge concludes that the ALJ's decision is not supported by substantial evidence.

In his Report, the Magistrate Judge also opines that the ALJ failed to provide further rationale to his finding that the plaintiff can lift 50 pounds occasionally and 25 pounds frequently and that the ALJ's RFC assessment was not supported by substantial evidence. However, this issue was not objected to by either party.

Finally, the Magistrate Judge asserts that the Appeals Council did not explicitly consider the new evidence from Drs. Ruffing and Key and that such new evidence of plaintiff's tachycardia should be considered on remand. However, the Appeals Council did expressly consider the new evidence, but declined review because it found the new evidence did not provide a basis for changing the ALJ's decision.

CONCLUSION

It is the duty of the ALJ reviewing the case, and not the responsibility of the courts, to make findings of fact and resolve conflicts in the evidence. This court's scope of review is limited to the determination of whether the findings of the Commissioner are supported by substantial evidence taking the record as a whole, *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), and whether the correct law was applied," *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002).

After a careful review of the record, including the findings of the ALJ, the briefs from the plaintiff and the Commissioner, the Magistrate Judge's Report, and the Commissioner's objections thereto, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ did not incorrectly apply the law in his decision. The court respectfully declines to accept the Magistrate Judge's Report and Recommendation. Accordingly, the Commissioner's decision is hereby affirmed.

IT IS SO ORDERED.

June 17, 2010                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                         United States District Judge